IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01477-RBJ-CBS

THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT 2004-06CB,

    Plaintiff,

v.

ANTHONY MULEI;
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for HERITAGE BANK N/K/A FIRST COMMUNITY BANK;
JOE HICKS; and
STEPHANIE Y. O'MALLEY, as Public Trustee for Denver County, Colorado,

    Defendants.

# ORDER

This matter comes before the Court on cross motions for summary judgment. [## 7, 9].

**Procedural History**

On October 21, 2009, Plaintiff Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWALT 2004-06CB ("BNY") filed a complaint in Denver District Court seeking equitable subrogation, foreclosure of an equitable lien, and declaratory judgment regarding real property ("property") located in the City and County of Denver, Colorado. [#2]. Defendants include: Anthony Mulei, former property owner; Heritage Bank n/k/a First Community Bank ("First Community"), a bank which formerly had a lien on the property; Joe Hicks, current property owner; and Stephanie O'Malley, the public trustee for Denver County, Colorado. On June 6, 2011, Federal Deposit Insurance Corporation ("FDIC"),

1

in its capacity as receiver for Defendant First Community, removed the matter to federal court. [#1]. Shortly thereafter, Plaintiff BNY and Defendant Joe Hicks each filed motions for summary judgment. [## 7, 9].

On June 24, 2011, FDIC filed a motion to stay proceedings, arguing BNY first needed to exhaust its mandatory administrative claims process. [#23]. On August 4, 2011, Magistrate Judge Schaffer partially granted this request and stayed proceedings to the extent they would implicate the rights of the FDIC in its capacity as receiver for First Community. [#32]. On December 1, 2011, FDIC filed a notice of plaintiff's exhaustion of mandatory administrative claims process, explaining that FDIC reviewed Plaintiff's administrative claim and denied it in its entirety. [#52]. Accordingly, the matter is ripe for review.

**Undisputed Facts[1]**

This case arises out of a series of loans taken out by former property owner, Anthony Mulei. In November, 2001, Mr. Mulei took out a note and first deed of trust with Amerifunding, Inc., which was secured by the property at issue and recorded that month. On December 5, 2003, Mr. Mulei also took out a home equity line of credit with Heritage Bank (now First Community), which was not recorded until January 9, 2004. Approximately one month later, Mr. Mulei took out a third note and deed of trust with America's Wholesale Lender. Mr. Mulei closed on the transaction on February 11, 2004, the deed of trust was recorded on March 4, 2004, and it was transferred to Plaintiff BNY on March 24, 2004. The proceeds of this loan, $276,000, were used to pay off the 2001 note and first deed of trust with Amerifunding, Inc. The Amerifunding deed of trust was released on March 31, 2004. Accordingly, as of March 31, 2004, two liens

---

[1] The facts are taken from BNY's complaint [#2] and supplemented by both parties' briefs. [## 7, 9]. These facts are not in dispute.

encumbered the property: (1) First Community's line of credit; and (2) BNY's deed of trust, which paid off the original home loan.

The issues in the present case originate from the priority of these two deeds of trust. BNY claims its loan was a first priority deed of trust because the proceeds of its loan were used to pay off the original loan, because the title search did not reveal any other encumbrances on the property, because First Community's intervening lien was recorded after BNY performed its title search, and because Mr. Mulei failed to disclose any other interests in the property. Ultimately, BNY argues that it reasonably believed its loan was secured by a first priority lien on the property. However, because First Community's deed of trust was recorded without BNY's knowledge and before BNY closed on its loan, First Community's lien moved into a first priority position after the original deed of trust was released.

Mr. Mulei ultimately defaulted on all of his loan obligations. First Community initiated a foreclosure action, and a notice of election and demand for sale was recorded on March 24, 2009. BNY received a notice of the foreclosure proceeding pursuant to Colo. R. Civ. Pro. 120, but it argues that the notice was insufficient because it did not reflect that First Community was foreclosing a first priority lien. BNY also claims the notice was insufficient because it was not sent to Mortgage Electronic Registration Systems, Inc. ("MERS"), which is designated as BNY's nominee in the deed of trust.

On July 23, 2009, a certificate of purchase was issued to The Aspen Creek Group, Inc., the highest bidder at the foreclosure sale. The next day, Defendant Hicks took an assignment of a statutory lien held by an HOA for approximately $6,000. As a junior lienholder, Mr. Hicks then redeemed the property for $59,694.98, which extinguished BNY's deed of trust. The public

trustee issued a confirmation deed to Mr. Hicks on August 28, 2009. BNY filed the present action in state court on October 21, 2009, shortly after it realized what had occurred.

BNY now argues that it is entitled to the remedies of equitable subrogation and an equitable lien. In the alternative, BNY claims it was an "omitted party" under C.R.S. § 38-38-506 and that it still retains an interest in the property. Mr. Hicks counters that he reasonably relied on the property records when he invested in the property, that BNY's interest in the property was extinguished after he redeemed the property, that BNY has no existing lien to equitably subrogate, and that BNY's own negligence created the circumstances in which it now finds itself.

### Standard of Review

Summary judgment may be granted only if the moving party shows that there is no genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### Conclusions

<u>Claims One and Two: Equitable Subrogation and Foreclosure of Equitable Lien</u>

"Equitable subrogation is a legal theory that allows the holder of an encumbrance on real property, like a mortgagee or a lienholder, to assume the priority position of a previous mortgagee or lienholder rather than falling into line behind all recorded liens or encumbrances." *Hicks v. Londre*, 125 P.3d 452, 454 (Colo. 2005). "The doctrine allows a later-filed lienholder to leap-frog over an intervening lienholder and take a priority position." *Id*. at 456. Additionally, "if the deed of trust has been released due to mistake, it may be restored through equitable subrogation." *Id.*

The *Hicks* court firmly established that equitable subrogation "operates as a narrow exception to the Recording Act" and announced conditions precedent to applying the doctrine: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." *Id*. at 456. The underlying force of the inquiry is "the overall context of equity and the specific facts of each case." *Id*. at 457.

In *Hicks*, the Colorado Supreme Court held that because property buyers did not have actual knowledge of a judgment lien encumbrance when they purchased a property and recorded the deed of trust, the new property purchase loan could be equitably subrogated ahead of the judgment lien. *Id*. The court focused on the fifth element of its enumerated factors, ultimately concluding the equitable subrogation would not be prejudicial to the judgment lienholder. *Id*. at 457.

In making this equitable determination, courts should also consider the "payor's knowledge of the intervening liens, its negligence in failing to discover those liens, and the payor's sophistication." *Land Title Inc. Corp. v. Ameriquest Mortgage Co.*, 207 P.3d 141, 145 (Colo. 2009)(holding lender not entitled to enforce subrogation rights where lender delayed recording its deed of trust for months and where the new purchasing company believed that it would own the property free and clear of all encumbrances). *See also Green Tree Serv., LLC v. U.S. Bank Nat'l Assoc, N.D.*, 192 P.3d 1014 (Colo. App. 2007)(upholding a trial court's refusal to void a deed of trust or set aside the public trustee's foreclosure sale where a "sophisticated, large commercial lender" had actual knowledge of a prior-recorded deed of trust and had failed to respond to numerous efforts to address an open line of credit that had a priority lien status).

Although Mr. Hicks argues that BNY has no lien to equitably subrogate, the fact remains that BNY has lost $276,000 to a foreclosure sale when it believed it had a first priority lien on the property. As a result, the Court finds it appropriate to consider the *Hicks* factors. The parties do not dispute that the first four *Hicks* factors are met in the present case. However, the fifth factor regarding injustice to the rights of a junior lienholder gets to the heart of the inquiry as to whether the relief BNY seeks would truly be equitable.

This Court finds it would not. Had BNY brought its present claims before the foreclosure sale or before Mr. Hicks redeemed the property, or had BNY exercised its right of redemption, this Court would be facing a very different question. However, because Mr. Hicks is now the current property owner, which he redeemed as a junior lienholder, this Court must also consider any prejudicial impact an equitable subrogation would have on Mr. Hicks.

On July 21, 2009, two days before the foreclosure sale, Mr. Hicks obtained an "Ownership and Encumbrance Report," which revealed that BNY's deed of trust was second in position and that First Community's foreclosing lien was a first priority lien. Hicks. Aff. [#9] at 49-50. Based upon this review, Mr. Hicks invested in the property because he knew that if he redeemed the property from his junior lien position, he would take title free and clear of encumbrances. *Id.* The foreclosure sale took place on July 23, 2009, and Mr. Hicks received a confirmation deed on August 28, 2009. *Id.* BNY filed the present action approximately two months later. Mr. Hicks says he would not have participated in the sale if he had known that the foreclosing lien was not a first priority lien. *Id.*

Based upon Mr. Hicks's affidavit and involvement, this Court has difficulty understanding how Mr. Hicks would not be prejudiced by granting BNY the relief it seeks. BNY argues that because public trustee sales are inherently risky, Mr. Hicks should not be afforded the

6

same protections as bona fide purchasers. [#7] at 7.  BNY further argues that Mr. Hicks purchased the property one day after obtaining an interest in the property via an HOA lien worth approximately $6,000, and he ultimately redeemed the property for $59,694.98.  Because Mr. Hicks redeemed the property for so little money when BNY lost $276,000, BNY claims that such a windfall constitutes unjust enrichment.  However, a third party's investment decision based upon a review of property records does not necessarily mean that Mr. Hicks was unjustly enriched at BNY's expense.

BNY had actual notice of the foreclosure sale on April 28, 2009, nearly three months before the sale took place.  [#9] at 53.  BNY admits that it received the notice sent pursuant to Colo. R. Civ. Pro. 120.  *Id.*  Instead, BNY argues that the notice it received was insufficient because the notice did not flag that First Community was foreclosing a first priority lien.  [#7] at 13 .  Ultimately, BNY contends that it "[h]ad no reason to believe it did not have a first lien." *Id*. The Court disagrees.

The notice indicated the upcoming foreclosure sale date and that First Community would be foreclosing a "Deed of trust dated December 5, 2003, signed by Anthony Mulei and recorded on January 9, 2004…." [#14] at 4.[2]  BNY is a sophisticated commercial lender. If it knew enough about the transaction to believe it had a first priority lien, it certainly knew the date that its deed of trust was recorded and could have easily cross-referenced the Rule 120 notice it received.  Had BNY done so, it could have prevented a third party's purchase of the property based upon his reasonable reliance on the property records.  Additionally, BNY offers nothing to support its claim that a Rule 120 notice is inadequate if it fails to state what priority lien is being foreclosed.  As a result, this Court finds it would be inequitable to grant BNY the relief it seeks,

---

[2] Both parties reference portions of this Rule 120 notice.  However, the Court is unable to locate the notice in the record.  The parties do not seem to disagree with the contents of the notice, and the Court therefore accepts both parties' representations regarding the contents as true.

because such relief would result in a $276,000 encumbrance on a property Mr. Hicks reasonably believed to be purchasing free and clear. *See Land Title Ins. Corp.*, 207 P.3d at 147("We note that the reasonableness of a party's reliance on the record state of title should be the guiding principle in determining whether that party can claim prejudice arising from such reliance.").

Although BNY argues that its predecessor in interest also reasonably relied upon property records when it made the initial loan to Mr. Mulei, this Court finds that such reliance does not tip the balance of the equities into BNY's favor.  While BNY procured title insurance, BNY did not purchase "gap insurance" to insure against any liens recorded during the gap between the "last time the public records can be checked for new liens prior to closing, and the time the new loan is recorded."  Aff. Patricia Untiedt [#9] at 10-11.  "Experienced lenders would find it an unacceptable risk to make a real estate loan without gap insurance.  Obtaining gap insurance is standard practice as one of the required aspects of a lender's due diligence." *Id*. ¶¶ 9-10.[3]  BNY is a "sophisticated, large commercial lender." *See Green Tree Serv*, 192 P.3d at 1020. Had BNY purchased gap insurance from its title company, BNY would have other recourse. [#9] at 52 (where BNY admits that the title company refused to cover its claims).  BNY's failure to protect itself from any liens recorded during the "gap," coupled with its failure to initiate this action before the foreclosure sale or to exercise its right to redeem, leads this Court to conclude that BNY's request for relief would simply be inequitable.  It is possible BNY has other cognizable claims against First Community, or Mr. Mulei, or its title company, but this Court fails to see how equitable subrogation and an equitable lien are at all an equitable solution in the present circumstances.

---

[3] Although Ms. Untiedt's affidavit neglects to say who exactly Ms. Untiedt is and why she has this particular knowledge, the Court notes that BNY did not object to this affidavit or seek to have it stricken.  Further, the content of the affidavit indicates that Ms. Untiedt is, in fact, a person of knowledge in this area. The Court also notes that BNY has not offered any contradicting evidence to suggest that purchasing gap insurance is not the industry standard.

8

Claim Three: Declaratory Judgment Regarding the "Omitted Party Statute"

Finally, BNY posits an alternative argument, claiming it is entitled to take refuge under Colorado's "omitted party" statute. *See* C.R.S. § 38-38-506. The statute provides for a junior lienholder's continuing interest in a property where the foreclosing party failed to notify it of the foreclosure sale. An "omitted party" is defined as any person who:

> (a) Prior to the recording of the notice of election and demand or lis pendens, has either acquired a record interest in the property or has obtained a valid possessory interest and is in actual possession, which interest is junior to the deed of trust or other lien being foreclosed and would otherwise be extinguished by the foreclosure; and
>
> (b) Is not included as a party defendant in a judicial foreclosure action or, if included, is not served with process or is not served with notice of levy or seizure pursuant to section 13-55-102, C.R.S., or is not notified pursuant to section 38-38-105.

C.R.S. § 38-38-506(1). BNY argues that because notice was not sent to its nominee, MERS, at the address contained in BNY's deed of trust, the notice was improper under Colorado's foreclosure statute. As a result, BNY claims it is an omitted party under the statute and still holds rights to the property.

Colorado courts have not considered whether a failure to notify a party's nominee as listed in a deed of trust is grounds for finding the party was an omitted party when the party itself had actual notice. Plaintiff relies upon an unpublished decision from the district of Arizona, in which the court determined that MERS was authorized to act on behalf of the lender and exercise the lender's rights under the deed of trust. *Blau v. America's Servicing Co.*, 2009 WL 3174823, * at 6 (D. Ariz. 2009). However, in *Blau* the deed of trust listed MERS as both "nominee" and "beneficiary," and it enumerated specific rights assigned to MERS under the "Transfer of Rights in the Property" section. *Id*. Additionally, the issues before that court were very different, as the court was considering the authority of MERS to act in place of a lender.

This Court has already determined that BNY received *actual notice* of the foreclosure proceeding, and BNY even admits it received this notice. Nonetheless, BNY failed to take any action or exercise its right of redemption. C.R.S. § 38-38-506(2)(a) provides:

> "The interest of an omitted party in the property that is the subject of a sale may be terminated if the omitted party, or anyone claiming by, through, or under an omitted party, in a civil action commenced at any time by an interested person as defined in paragraph (c) of this subsection (2), by an omitted party, or by anyone claiming by, through, or under an omitted party, is afforded rights of cure if the omitted party would have been entitled to cure pursuant to section 38-38-104, or is afforded redemption rights if the omitted party would have been entitled to redeem pursuant to section 38-38-302, upon such terms as the court may deem equitable under the circumstances, which terms shall not, however, be more favorable than the person's statutory rights. *The court shall give full consideration to whether the omitted party or anyone claiming by, through, or under an omitted party was given or had actual notice or knowledge of the foreclosure and was given an opportunity to exercise statutory rights to cure or redeem.*" (emphasis added).

BNY had actual notice and knowledge of the foreclosure, and BNY had the opportunity to exercise any statutory rights. Therefore, BNY does not benefit from the omitted party statute. Its failure to act when it had the requisite notice and ability to do so precludes the relief it seeks.

**Order**

1. Motion #7 is DENIED.

2. Motion #9 is GRANTED.

3. Because the Court's order dispenses of all of BNY's claims for relief, BNY's action is accordingly dismissed with prejudice as to all defendants.

DATED this 18th day of June, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge